JOHN F. ROUMAGE v. THE MECHANICS FIRE INSURANCE COMPANY.

Where it appeared in evidence, that the President and one of the Directors of the company went to the place where the fire was, for the purpose of examining into the matter, the court held that the assured might well be excused from giving any further notice to the company. He could not make it more certain. If the knowledge be fully communicated, courts are not very particular as to the form in which it is done.

When the nearest officer, who was a clergyman, certified as to the plaintiff's character, and that he verily believed, that the fire was the result of misfortune and without any fraud or evil practice, but declined certifying the amount "solely upon the ground of not having any such knowledge of the amount of property consumed, as to justify him in making any certificate," it was held, not to be a

compliance on the part of the assured with the condition in the policy requiring a certificate of the amount of the loss or damage sustained by the fire. The company is entitled to the certificate. It is within the contract. The conditions attached to policies of insurance are regarded as conditions precedent, and the plaintiff cannot recover without a strict compliance with them.

A defect in the certificate presented to the company, is not waived by their receiving it without objection, nor by adopting a resolution "that the company will not pay the claim made by the plaintiff, or any part thereof, believing, that it is founded in an attempt to defraud the company.

---

This was an action of assumpsit brought by the plaintiff against the defendants on a policy of insurance, and was tried before the Chief Justice at the April term, 1831, of the Essex Circuit. The plaintiff was nonsuited. On the return of the postea, the plaintiff obtained a rule to shew cause why the nonsuit should not be set aside. The rule was argued at the last term by *Wood* and *Wm. Pennington* for the plaintiff, and by *Frelinghuysen* and *Hornblower* for the defendants ; and now at this term, the opinion of the court was delivered by Justice Drake.

DRAKE, J. This cause came on to be tried, at a circuit court holden on the 21st day of April A. D. 1831, at Newark, in and for the county of Essex ; when the plaintiff gave in evidence the policy of insurance stated in the pleadings, dated the 23d day of January A. D. 1828, for six months insurance upon broken flax, contained in a certain building therein described, to the amount of 4500 dollars ; and that a fire took place on the 11th day of July, 1828, and burnt the building in which the flax was stored, together with a considerable quantity of broken flax ; that a statement of loss, under the hand of the plaintiff, and a certificate of Thomas Morrell, a clergyman, and the nearest clergyman, magistrate, or notary public, to the place of the fire, were received by the company, on the 17th day of July A. D. 1828: which statement and certificate are admitted to be regular, except that the amount of loss is left blank in the certificate. He also proved, by the secretary of the company, that the defendants understood there had been a fire the next day after it took place ; and that the president and one of the directors went to the place of the fire, " for the purpose of examining into the matter." He also gave in evidence

Roumage *v.* Insurance Co.

a letter and resolution of the company sent to him in the words following :

OFFICE OF THE MECHANICS F. I. CO'Y.

NEWARK, Sept. 16, 1828.

Mr. JOHN LEWIS FREDERICK ROUMAGE,

SIR,

I hereby furnish you with a copy of a resolution, passed on the 27th day of August last, by the board of directors, to wit :

" Unanimously resolved, that the secretary inform John Lewis Frederick Roumage, by sending him a copy of this resolution, that this company will not pay the claim made by him, or any part thereof, believing that it is founded in an attempt to defraud the company."

W. A. MYERS, Secr'y.

One of the conditions of insurance annexed to the policy, is in the following words :

IX. All persons insured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company ; and as soon after as possible, to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation, and also, if required, by their books of account and other proper vouchers ; they shall also declare on oath whether any, and what other insurance has been made on the same property, and procure a certificate, under the hand of a magistrate, notary public, or clergyman, (most contiguous to the place of the fire, and not concerned in the loss) that they are acquainted with the character and circumstances of the person or persons insured ; and that having investigated the circumstances in relation to such loss, do know or verily believe that he, she, or they really and by misfortune, and without fraud or evil practice, hath, or have sustained by such fire, loss or damage to the amount therein mentioned ; and until such proofs, declarations and certificates are produced, the loss shall not be payable : Also if there appear any fraud or false swearing, the claimant shall forfeit all claims by virtue of this policy."

Roumage *v.* Insurance Co.

The plaintiff having rested, the defendant moved that he be nonsuited; which after argument, was ordered by the court.

Three distinct grounds were urged before the circuit court, and are here insisted on, as justifying the order of nonsuit.

1st. That no notice of the fire had been given by the plaintiff to the company.

2d. That the certificate of the clergyman was defective, inasmuch as it did not set out the amount of loss.

3d. That it did not appear that broken flax (the article insured) was in the building at the time the insurance was effected.

As to the first point, there is no *direct* proof of notice, either verbal, or in writing, previous to the furnishing of the statement of loss, which was done five days after the fire. The distance of the office of the company from the place of the fire was not exceeding six miles. The condition above cited, requires notice to be given *forthwith*. This condition is not complied with, *in its terms*, by a notice in five days; nor is it *in its spirit and intention*. The notice is required, that the company may as early as possible be acquainted with the event, that they may look after the property, and that they may have the best opportunity of investigating the circumstances. But this is not the only evidence of notice. The secretary of the company, testified " that they understood there had been a fire, the next day, and the president and one of the directors went to Elizabeth-Town (where the fire was) for the purpose of examining into the matter." Here was notice,—a substantial notice, upon which they acted. But was it given by the plaintiff? It appears to me, that this was a question for the jury. And indeed, when two of the principal officers of the company, upon receiving intelligence of the fire, appeared on the ground and saw what had taken place, the plaintiff might well be excused from giving any further notice. He could not make it more certain. If the knowledge be fully communicated, courts are not very particular as to the form in which it is done.

But the second ground was the one principally relied on ;— that the condition requiring a certificate, was not complied with, the minister not stating the amount of loss. A leading case on this subject, is that of *Worsley* v. *Wood*, 6 *Term Rep.* 710,

in which it was decided that the obtaining of such a certificate was a condition precedent, and it must be complied with, or the company could not be called upon to pay, even in case the person whose certificate was required, *wrongfully and without probable cause,* refused to grant it;—that the parties were bound by the terms of the contract;—that it was, on the part of the plaintiff, a voluntary stipulation, that he would get such certificate before calling for the money;—and if subsequent events rendered it impossible to obtain it, so that he could not perform the condition, it was his folly to submit to a hard contract. Since the decision of this case, the question has been considered settled in England. And the same doctrine has been held by the Supreme Court of the United States, in the case of *The Columbian Ins. Co.* v. *Lawrence and Poindexter, 2d Peters,* 25. And by the Supreme Court of the State of New York, in numerous cases there decided. In the late case of *Dawes* v. *The North River Ins. Company,* 7th *Cowen,* 462, *Ch. J. Savage* says, " in cases of this kind, great strictness is required, and the plaintiff cannot recover, without a literal compliance with the conditions."

These decisions certainly have principle to support them; and yet they often operate very hardly in these cases of fire insurance. Because, where a company is doing business, upon fixed terms, with the members of a community generally, most persons rest satisfied with the presumption, that the terms upon which the business is done are just if not liberal, inasmuch as they have been generally acquiesced in. Hence they do not examine minutely the stipulations into which they enter. And the courts, at first, very reluctantly yielded to the construction which has become finally settled, that these stipulations must be regarded as conditions precedent, and should be strictly complied with. Indeed the counsel, who argued this cause so ably on the part of the plaintiff, evidently felt the weight of authority opposed to them on this point. It obliged them to place their reliance principally on another; which is,—that the strict performance of the condition, in relation to the certificate of the amount of loss, was waived by the company.

These preliminary proofs often partake more of form than substance, and have but little connection with the real justice of

the case, and sometimes it has been found difficult and even impossible to comply with them. Hence courts have inclined to consider any conduct of the underwriters, which was calculated to mislead the assured as to the necessity of a strict performance of these conditions, such a waiver of them as would *excuse* the further effort to perform them.

The case now before us, presents some circumstances which should induce the court to go as far as possible in relieving the plaintiff from the consequences of this objection. The condition is to procure the certificate of *a* magistrate, notary public, or clergyman *most* contiguous to the place of the fire. Its meaning is doubtful. The plaintiff appears to have interpreted it as confining him to a single individual. If it had been " *the* magistrate," &c., it would have been less equivocal. Does the use of the indefinite article really give any more latitude to the construction, seeing that it is followed by the words " *most contiguous?* There cannot be but *one* person *most* contiguous. But it is not necessary that I should interpret this article. I would, however, point out some of those obscurities, which may have misled the plaintiff and which are calculated to mislead others, in this agricultural state, even if *usage* has fixed the meaning of such expressions to the knowledge of more commercial and populous districts. The plaintiff called on the nearest officer described, who was a clergyman. He certified as to the plaintiff's character, and that he verily believed that the fire was the result of misfortune and without any fraud, or evil practice. But he declined certifying the amount, " solely upon the ground of not having any such knowledge of the amount of property consumed, as to justify him in making any certificate." The blank in the certificate, for the amount, was not filled up. It was forwarded in that state and received by the company, so far as appears, without objection.

This 9th article is drawn upon the most rigid principles, and is, in several particulars, of dubious meaning. In its strictness, with respect to the certifying officer, it resembles that adopted by the Sun Insurance office, which gave rise to the case in *6th Term Rep.* and to that of the New York offices, more nearly than to any others that I have seen. But it exceeds them both in some particulars. They require that the assured should ren-

der as particular an account of the loss and damage *as the nature of the case will admit of.* The English article also requires him to make proof by books of account and vouchers, *as shall be reasonably required.* This article leaves out those qualifying expressions in both instances, and makes it incumbent to render a particular account absolutely, and to support it by books of account *if required;* thus leaving it to be debated, whether upon the strict construction of this condition precedent (a compliance with which even the act of God shall not excuse) it is possible to recover, if the books of account should be burnt by the fire. The Columbian Insurance Company have not only retained those qualifying expressions, but make the article more liberal, by requiring the certificate of a magistrate of the town or county where the fire happened. The Philadelphia companies have, I believe, generally adopted the following article,

"All persons assured by this company, sustaining any loss or damage by fire, are forthwith to give notice to the secretary, and as soon as possible after, to deliver in as particular an account of their loss or damage as the nature of the case will admit of, and to produce to the company satisfactory proof thereof." The same is adopted by the Mount-Holly Insurance Company in this state.

In this case the nearest officer named in the article was a clergyman, far advanced in years, who was willing to certify, and did certify, to fair character, and accidental loss; but he was too little acquainted with the property or its value, to certify to that. The plaintiff had stated a large amount, and probably wished the clergyman to come up to that mark, supposing the condition to require it. But whether it does or not, is another of the uncertainties of this 9th article. He is to certify to the amount *therein mentioned.* Mentioned in what? In his *certificate,* or in the *statement* of the assured? A grammatical construction would make it in the former; and the New York article is explicit to that effect. If that be the true construction, the condition would have been as well complied with by filling up the blank with one dollar as with five thousand. In that case the performance of the condition would have been a mere form. At any rate it was of but little consequence to the company,

on this occasion. The fire was within six miles of their office, in a large town : and they had an intelligent agent, who had been engaged to effect insurances for them, residing almost next door to the place of the fire. Under such circumstances what influence would the certificate of this old man, as to the amount of loss, had it been obtained, have had upon the company ? Not the slightest.

I cannot avoid thinking that, under these circumstances, to require this worthless certificate, was excessively strict. But the company was entitled to it. It was within their contract. And they have a right, *in law*, to make the objection that it was imperfect, and *in conscience* too, if. they *really believe* that an attempt is made to defraud them.

These conditions, attached to policies of insurance, are matters of general interest. It is a great accommodation to our citizens to be able to insure against the disastrous consequences of fire, and every individual owning property exposed to risk should be encouraged to avail himself of the means to do so, if it can be affected upon reasonable terms. Hence I feel warranted in more freedom of remark respecting the nature of these conditions, than I should in relation to a private contract, affecting but a few individuals, and where the form of it was not to be repeated in an extended course of business in future. In the case of *Worsley* against *Wood*, some members of the court expressed a favorable opinion of the effects of an article of this description. Its good effects may perhaps overbalance the evil, among a highly commercial people, long accustomed to promptness, accuracy, and nice attention to even the minute details of business. But I am fully persuaded that such an article as that adopted by this company is not deserving of compliment here. There is danger that it will be used as a sword, rather than as a shield ; more as an engine of fraud, than as a protection against it. The honest man is equally exposed with the rogue to the effects of accident and the caprices and hostility of the certifying officer. And he is much more liable to fail in compliance, through ignorance, inattention, forgetfulness of formalities in a moment of distress, and misplaced confidence in the fairness of others. I am fully persuaded that in New Jersey this article will

Roumage *v.* Insurance Co.

defeat the claims of ten honest men, where it will interfere with one of an opposite character.

From these views of the nature of this condition, and of the circumstances of this case, I have examined the evidence with a strong inclination to find in the conduct of the company, some good grounds to warrant us in relieving the plaintiff from the consequences of his failure to present a perfect certificate. But I have not been able to satisfy myself that it can be done consistently with sound principle or well established authority. It is a contract, although a hard one. A contract which must be performed, if not waived. I find no *express* waiver of it, nor any act or circumstance from which, in my view, it can be fairly *implied ;* or which manifests a design to mislead the plaintiff on this subject or was calculated to have that effect.

The circumstances relied on by the plaintiff's counsel, are 1st. The receiving of the certificate without objection.

2d. The contents of the resolution of the company, adopted on the 27th day of August, 1828.

It is a general principle that the insured should have an interest in the property lost or injured ; and the companies usually stipulate for some proof of this interest, as well as other matters evidencing the fairness of the claim, to be laid before them, a reasonable time before they shall be liable to pay, in order that they may judge of the legality of the demand and pay without suit if justice requires it. In the case of *Vos & Lightborne* v. *Robinson,* 9 *John.* 192, the agent of the defendant received from the plaintiffs the protest of the captain of the vessel, stating the loss thirty days before the commencement of the suit, but the register of the vessel (containing the proof of interest) was not then produced, nor until it was given in evidence at the trial. When the protest was shewn to the underwriter, *he made no objection* to the sufficiency of the preliminary proof; but refused to pay, for a total loss, on the ground of *a deviation.* The court said that the underwriter, by *putting himself distinctly upon that ground,* must be deemed to have admitted the plaintiffs' interest in the vessel, or to have waived the necessity of producing the proof of it.

In the case of *The Columbian Insurance Company* v. *Poindex-*

*ter,* 2 *Peters,* 25, as in the present one, the preliminary proofs were defective, and it did not appear that the company, on the receipt of them, made any objection. No expression was used at that time, nor at any time afterwards, before the commencement of the suit, although there was considerable negociation between the parties, having any allusion to the preliminary proof, or to the waiver of it. The C. J. says, *p.* 53, " The resolution of the board to resist the claim, is expressed in general terms, and consequently applies to every part of the testimony offered in support of it. We know of no principle or usage, which requires underwriters to specify their objections, or which justifies the inference that any objection is waived." " The general resolution of the board was notice to the assured, that if they intended to assert their claim in a court of justice, they must come into court prepared to support it." It is true that the chief justice also stated a *usage* of the company, relative to these preliminary proofs, as an additional reason why the assured in that case, could not have been misled. But the above principles are laid down as sufficient to decide the case without any aid from that circumstance. And they are unquestionably sound. A party cannot be obliged in this way to disclose his defence.

The only case, that I have noticed, which makes mere silence a waiver of the preliminary proof is that against *The Ocean Insurance Company,* 6*th Cowen* 404. In this particular, it is, however, directly opposed by the case above cited from 2*d Peters,* and it is also in effect overruled by a subsequent case, decided in the same court. *Davis* v. *The North River Insurance Company,* 7*th Cowen,* 462. In this latter case, there was not only no objection made, but there was an express waiver by the president of the company. The court considered that he had no authority to make such waiver, and decided the cause against the claimant, paying no attention to the waiver, to be implied from want of objection.

But the counsel for the plaintiff insisted that the present case resembled that in 9 *John.* above cited; in which the court did not place itself upon the fact that the proofs presented were not objected to, but upon this, that a distinct and substantial ground of defence was designated as that upon which the underwriter

Roumage *v.* Insurance Co.

would rely. It was argued that the same thing was done in this case. But I do not so consider it. The resolution is general. " This company will not pay the claim, or any part thereof." And then follows, not a specific ground of defence against the claim, but the motive inducing the company to refuse payment; "believing that it is founded in an attempt to defraud the company." A reason, which certainly was not calculated to induce the plaintiff or any rational man, to suppose that they would not avail themselves of every defence which their case permitted.

My opinion being against the plaintiff on this point, I deem it unnecessary to examine the remaining one.

EWING, C. J. concurred.

FORD, J. This action is on a policy insuring flax broken by machinery and stored in bales or bundles in a certain building, against loss or damage by fire for the space of six months. To the policy there are thirteen conditions annexed, and to be considered as parts of the agreement, the ninth of which is in the following words : " All persons insured by this company, and sustaining loss or damage by fire, *are forthwith to give notice thereof to the company,* and as soon after as possible, to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation, and also if required, by their books of account and other proper vouchers ; they shall also declare on oath. whether any and what other insurance has been made on the same property, and procure a certificate under the hand of a magistrate, notary public or clergyman (most contiguous to the place of the fire and not concerned in the loss) that they are acquainted with the character and circumstances of the person or persons insured, and do know or verily believe, that he, she or they, really and by misfortune, and without fraud or evil practice, hath or have sustained by such fire, loss and damage to the amount therein mentioned ; *and until such proofs, declarations and certificates are produced, the loss shall not be payable.*"

When the trial came on, the assured proved a loss and destruction of the flax by fire, after midnight, between the tenth

and eleventh of July 1828; also a written notice of the loss having been given to the company on the seventeenth day of the month, together with a particular account of the loss and damage, upon his oath ; also that he procured and delivered to them a certificate under the hand of the Rev. Mr. Morrell, a clergyman living most contiguous to the place of the fire, certifying his belief that the assured had really and by misfortune, and without fraud or evil practice, sustained loss and damage by such fire. It did not state what he believed to be the amount of the loss ; he was an aged gentleman who seldom left his house; he declared that he had no knowledge of the quantity of the flax nor of its quality, nor of its market value ; he could not therefore form any belief in his own mind of the amount of damage; he had no belief, and if he certified that he had, it would be an untruth, and he could not conscientiously do it.   Beside these documents the assured called witnesses, who established the quantity of the flax, the differences in quality and the marketable value, as nearly as might reasonably be expected after such a loss, and far exceeding the amount of 4500 dollars, to which amount only the company had made insurance. But the assured was ordered to be nonsuited, and that upon two grounds, first, because notice of the fire had not been given to the company *immediately ;* and secondly, because the clergyman stated no amount of damages.   These points are brought up for more deliberate consideration than is usually possible in the haste of a trial.

First, That notice of the fire was not given *forthwith* but was unreasonably delayed.   It happened in the night between the tenth and eleventh, and the written notice was not given till the seventeenth of the month.   Five entire days' delay was no compliance with a condition, which, by requiring notice *forthwith,* may be likened to that of the dishonoring of a note or bill of exchange, notice of which must be given by the mail of the *next day.*   And if it is not given till the *sixth* day after the fire, the condition was not performed, and the right was forfeited of having payment for the loss.   A nonsuit would have been proper on this ground, if this had been the whole of the case.   But there is a question whether *parol* notice was not given the *next day* after the fire ; for a notice by parol would be

just as valid as one in writing, inasmuch as the policy does not require it to be in writing, or in any specified form.   Whatever matter was intended to be in writing, was expressed so in the condition ; thus the certificate was to be under the *hand* of the clergyman ; the amount of the loss was to be *signed* by the party ; but notice of the fire was not agreed to be in writing and therefore cannot be insisted on.   A statute or written rule of practice is to be construed differently from a private agree-ment, in which the parties stipulate as they please, requiring some matters to be in writing and others not ; but what is not required cannot be added any more than what is required can be dispensed with.   Therefore a verbal message, had it been delivered the next day after the fire, would have fulfilled this part of the condition.   Now I think there was circumstantial evidence enough, from which a jury might have inferred that a verbal message of the fire, the next day after it happened, was delivered to the company.   The secretary of the company admitted, in the course of his testimony, that notice *was* received by them the *next* day after the fire, though he did not tell (because probably he did not know) the person by whom it was brought ; but he puts their receipt of it beyond a doubt by testifying that the president and one of the directors, and he thinks himself also, repaired to Elizabeth-Town the same day, *in pursuance of it,* to examine into the matter.   Now the jury might have inferred that this notice came from the assured, more probably than from any other person.   In the first place,. as the *duty* of sending it lay on him alone, the presumption was far more natural and reasonable that it came from him, than from any other person.   In the second place, he had promised to send it, and its being done by an *unknown* person raised a strong presumption (as in the case of previous threats) that it was done by the person who promised to do it.   In the third place, he, of all persons in the world, was the most interested to do what we find was actually done, and interest, that great swayer of human actions, would naturally attribute the deed to him.   In the fourth place, many persons were at that fire, probably, who might be going next day to Newark, by whom he might have sent the message, though the terror of the fire may have vanished that person's name from his recollection.

Admitting then that notice was actually given of the fire, and actually received by the company, the next day after it happened, the presumption that it was more probably sent by the assured than any other person, arising from the foregoing circumstances, might lawfully have been left to the jury.

There is still another fact, which might produce a presumption that the assured himself gave notice to the company the very next day. It depends on what the secretary meant; in giving his evidence by "*next day*," he says that the president and one of the directors went to Elizabeth-Town the next day, to enquire into the matter. When an event happens in the night time, as soon as the ensuing sun brings on day light, it is called in common parlance, the next day. As they went to examine the premises and the manner in which the fire occurred, they must or might have been eye witnesses to the burning embers, and have personally seen the assured, while busily employed in guarding his dwelling-house from danger on account of its nearness to those embers, and if he had only pointed to the ruins before their eyes with his finger, it would have been deemed as good notice, by a reasonable jury, as if he had represented his loss by an eloquent address. And I incline to have these circumstances submitted to a jury, the more strongly from the evident injustice of retaining the premium and yet evading responsibility on such a strange ground as that of not having due notice of a fire, at which the president, the secretary, and one of the directors of the company were personally present, probably within eight or ten hours from the time it broke out. I cannot sustain the nonsuit on this ground and therefore must consider the next.

Second, The next reason is because the clergyman does not mention the amount of the loss. It was a condition very plainly inserted in the policy, that a loss should not be payable until a certificate was produced under the hand of a clergyman most contiguous to the place of the fire, certifying among other things, his belief, as to the *amount* of the loss. Now this is a condition precedent, that must be fulfilled before the assured can bring an action. The power of the court to waive its fulfilment was solemnly disclaimed in the well known case of *Worsley* v. *Wood*, 6 *Term Rep.* 710, wherein the reasoning is so

conclusive as never to have been questioned, so far as I know, in any subsequent case; on the contrary, it has been fully affirmed in the Supreme Court of the United States in the case of *The Columbian Insurance Co.* v. *Lawrence,* 2 *Peters' Rep.* 25. The assured says he used his best *endeavors* to obtain the insertion of a sum in the certificate of the clergyman, and thinks his just rights ought not to be extinguished on account of the imbecility of that aged and reverend gentleman. But this does not amount to a legal excuse; it shews only a misfortune that might awaken great sympathy for an honest sufferer; but sympathy must not be substituted for law. A man's mere *endeavors* to fulfil his contract, can never be received in lieu of performance, so as to acquire rights by endeavors, that were promised to performance only. Again he says, that the insertion of *a sum* was a mere *empty form* which could do no good or harm to either party; that if Mr. Morrell had inserted ten thousand dollars in the certificate, it could have done the assured no good; or if he had inserted only five dollars, it would have done him no harm; that judicial proof of the actual loss and damage must still have been given, by the assured's oath, his books of account, and witnesses acquainted with facts; whereas the certificate of this aged clergyman *who knew nothing about the matter* was a mere *empty form,* for want of which the demands of justice ought not to be sacrificed. But the law is otherwise; for admitting freely the emptiness of the form, and that it might well be dispensed with in such policies, yet where this condition is really made a part of the contract, it can be waived by the party only, in whose favor it was made; and if not so waived, it resembles a warranty, which must be strictly performed, whether the thing be material or not. *Cowp.* 785; 3 *Term Rep.* 360; *Phillips on Insur.* 127. And therefore the nonsuit was properly ordered, inasmuch as no amount of damage was stated in the certificate, unless this defect, in a seemingly immaterial form, has been waived by the act of the company.

A waiver is *express* when it is made by release; or *implied* whenever it may be reasonably and fairly inferred from the act, omission or silence of the party who has the power of waiving. The doctrine has been prevalent as well in ancient as modern times throughout every branch of law as well as of practice. It

Roumage *v.* Insurance Co.

is laid down in *Coke Littleton*, that if there be a feoffment in fee,. with a yearly rent reserved to the feoffor, and also with a condition that he may re-enter, in case the rent becomes arrear, yet if he brings an *action* for rent arrear, it will amount to an implied waiver of the right of re-entry. 1 *Inst. sec.* 341. So if one contract to build a house for a certain sum of money, upon condition that part of the money shall be advanced to him, before he commences the work, yet he begins and completes the building without any advance, it will be an implied waiver of that condition without a recision of the contract. If a juror be related to one of the parties, and it be known to the other party who is present, but interposes no challenge, the objection is impliedly waived and cannot be set up afterward. So if he knows a witness to be interested against him in the event of the suit, and yet suffers him on being called to be sworn and examined, it will amount to a waiver of the objection, so that he cannot afterward resort to proof of his incompetency. If a party do not file pleadings within the time prescribed by law, and the adverse party do not take advantage of it at the *next term*, it will be considered a waiver of his right. It is useless to cite further instances of waiver by implication which are almost endless in number. A waiver may be inferred from any act or omission, whatever in a party, wherever such inference can be fairly made and upon reasonable grounds. Let us examine the case according to these principles. The assured laid this certificate under the hand of the Rev. Mr. Morrell before the board of directors, without concealing from them this omission as to the amount of damage, but openly apologizing for it by making a fair disclosure of the real scruples of this aged clergyman, arising simply from his ignorance of facts, confiding in the liberality of the company, either to waive this unimportant form, or else by making it a matter of objection, that he might lay the matter again before Mr. Morrell, who had already certified his belief that the happening of the fire had been a matter of misfortune without fraud or evil practice. The matter was thus left under the consideration of the board without any express waiver or objection for the space of a month, on account of this defect, when a resolution of the board was sent to him in these words—" resolved that this com-

pany will not pay the claim made by him or any part thereof, believing that it is founded in an attempt to defraud the company." It passes over this defect without even the least objection being notified concerning it, and places their refusal of payment upon a totally *different ground*, namely, that his claim was founded in an attempt *to defraud the company.* Thus, placing their defence upon the honest merits of the case, wherein this defect in an immaterial and insignificant form was entirely overlooked, they as naturally misled him into a belief of its being waived as if they had expressed it, and such was the operation of it *in fact*, he having made no application afterward to get the certificate amended by the insertion of a small sum for the sake merely of form, although it was amendable in this respect, and who can doubt that it would have been amended by this respectable clergyman if he had been asked to insert only a small nominal sum of one or two dollars, if he had been assured that the plaintiff could not have a trial without it? Therefore I think this inference might have been submitted to the jury, who would have been legally competent to allow it in case they thought it fair and reasonable. The inference has been freely drawn of a waiver of defects in these preliminary matters, in every insurance case to be found in the books having any similarity to the present. And they ought the more to be supported, as they tend to advance the merits and justice of each case, to candor in business and the discountenancing of duplicity and delusive dealing in matters of insurance whether against fire, or on the ocean. They are of the utmost moment to a commercial people, and have attracted therefore the earnest and repeated consideration of the judiciary of New-York.

The first case I shall refer to is that of *Johnson* v. *The Columbian Insurance Company*, 7 *Johns. Rep.* 315. It was an action on a policy of insurance for the total loss of a vessel, in which policy was a condition that the company should not be liable for any *loss* until evidence *thereof*, and of the assured's *interest* in the vessel, had been laid before them. The preliminary proof on these points was as defective, when laid before the company, as it is in this case; but the company referred it to their *agent*, who reported a sum in favor of the assured *without objecting to the proof;* but being a less sum than he would accept, he brought

Roumage *v.* Insurance Co.

an action and laid full proof of interest and loss before the court and jury. There was a motion for nonsuit because this proof had not been laid *before the company*, prior to the commencement of the action. The court unanimously resolved, that the act of the agent was the act of the company, and their admitting *something to be due* implied either an *admission* that the preliminary proof was satisfactory, or that they *waived* the defects.

This decision maintaining an implied waiver of preliminary proof was of too much consequence to the commercial world and to all underwriters, not to be repeatedly agitated; and in a subsequent case of *Vos & Lightborne* v. *Robinson*, 9 *John.* 192, being brought again before the court, it was deliberately reconsidered and abundantly confirmed. The action, on a similar policy, was for the total loss of the Schooner Maria. Sufficient proof was given to the underwriter of the loss of the vessel, but not of the title the assured had for her; this part of the preliminary proof was as defective as it is in the present case; the underwriter made, however, *no objection on this account*, but refused payment for the loss, upon the ground that the schooner had *deviated from her voyage*. A nonsuit was moved for, because preliminary evidence of the *interest* of the assured had not been laid before the underwriter prior to the commencement of the action. After full argument, the court decided unanimously that the underwriter had *waived* any objection that might have been taken to this defect by his saying nothing about *it*, but placing his refusal to pay on the ground of a *deviation*. Now the present case is precisely like it; the insurance company took no exception to the defect in the clergyman's certificate; they said nothing about *it*, but placed their refusal to pay, on the ground of *fraud;* that he attempted *a fraud* on the company; importing a charge of having set fire himself to the flax; a matter that had not the least connexion with the certificate of Mr. Morrell; no more than the deviation of the ship had with the title to it; and this case in the Supreme Court of New York, must be denied to be law or it ought to be adhered to in principle, and must conclude the present case. It was cited in the Supreme Court of the United States and neither denied or even doubted by Chief Justice Marshall, who in delivering his opin-

ion, placed it on another ground no way contrary to this decision. This principle of *waiver* came again before the Supreme Court of New York, under a bench of new judges, in a later case of *Francis* v. *The Ocean Insurance Company*, 6 Cowen 404. Before the assured had done offering all the evidence that he meant to give of his *interest*, the company declared to him, *that they would not settle the loss in any way*, whereupon he laid no more evidence of his *interest* before them but brought his action. The court said, the company *waived* whatever imperfection there may have been in the *preliminary proofs* of the assured's interest by not putting their refusal to pay on *that* ground; they declared that they would not settle the claim in any way; putting their objection to pay on the *merits of the case*, and *not* on any defect in the proof of the plaintiff's interest. What the company answered was tantamount to saying, give yourselves or us no farther trouble with *preliminary proofs*, but bring your action, for we will not settle the claim *in any way*, not if your preliminary proofs were ever so complete, for we have a *different defence ;* and it appears to me to have warranted the inference of a waiver, as drawn by the court.

These preliminary proofs have no relation to the *merits* and are never required by law; they are the consequence of special conditions woven round a policy, like a bordering of net work, wherein honest and incautious sufferers by fire, may be entangled and defeated of their remedies, possibly in one half of the losses that happen, if the insurance companies are tempted to use them for that purpose. And though they may be lawfully insisted on, still they may be lawfully waived; and ought to be considered waived, by any company, whenever it places its objection on *other grounds*, and makes *no* reference to these. The principles of justice and fair dealing require it. Why should an honest sufferer be deluded by a formal notice that his claim will be resisted on the ground of *fraud*, when the company *secretly* intend to oppose it on the ground of these *forms ?* Why lead him into a preparation on the merits when they secretly intend a nonsuit on defects in form? Notice that his claim will be resisted is all fair; but if they go beyond that and give notice that they intend to try the cause on its *merits*, they hang out false colors to the sufferer if they intend not to do so. Here is a

*resolution* drawn up by the company with great dignity, and served on the sufferer with solemn and formal pomp, that they mean to resist his claim as being founded in *fraud*, and when they get him to trial, they sink this resolution, they shift the flag they promised to engage under and attack him under colors that had been masked below. An exception to the preliminary proofs excludes the merits and is inconsistent with the resolution. They cannot stand together. The resolution is a false pretence, unless it is construed into a waiver of the exception. The decisions made in the Supreme Court of the State of New York, after frequent deliberations, are not only all to this effect, but have never been questioned.

It appears to me that the case in the Supreme Court of the United States, of *The Columbian Insurance Company* v. *Lawrence*, 2 *Peters* 25, cannot be arrayed against these decisions without distorting the facts. The *certificate* in that case was defective as it is in this, and the plaintiffs argued that the defect had been waived. But in that case there was *nothing for the inference of a waiver to rest upon.* The defective certificate had never 'come under the consideration of the board; it was proved to be a known usage and custom of the company never to examine the preliminary proofs until after they had decided to *admit the claim*, and this usage or custom was known to all those who dealt with them. Therefore the defect was *unknown* to them and the supposition of having waived what they knew nothing about, destroyed itself. It left no pretence for a waiver, as the chief justice truly observed. They must have done it, if at all, blindfolded. The difference is, that the Mechanics' Insurance Company have no such custom or usage, nor is any such known or presumed to be known to the persons who deal with them. They are not blindfolded, but examine these preliminary proofs, like all other persons, when offered to them, and are instantly capable to waive or not to waive, knowingly and understandingly. When they adopt a resolution they have the whole case before them and act upon it. There is another difference between the two cases which renders them, if possible, still more unlike. The resolution of the Columbian Company was a *general* one, " Resolved that the claim of L. and P. *be resisted*, and that the secretary furnish them with a copy of this

9

resolution." They gave notice of no *particular ground*, to the
exclusion of others not mentioned; nor placed the assured under
any delusion; they simply resolved to resist the claim; where-
as the Mechanics' company after resolving to resist the claim,
went on to give notice of the *ground* on which they meant to
resist it, and may well be considered as waiving any other. The
Chief Justice observed this thing, in *page* 53, emphatically,
" that the resolution of the board is expressed in *general terms*,"
and adds with great precision " we know of no principle nor
usage which *requires* underwriters to specify their objections or
to separate the preliminary proofs from the other proofs." But if
they do it *without being required*, and serve a voluntary notice that
they mean to resist the claim on its *merits*, they do separate the
preliminary proof from the merits in point of fact; and what his
opinion would be in such a case he does not say, for it was not
a point in the cause before him; nor do I think it treating the
opinion of that great, learned and cautious magistrate with pro-
per candor to apply it to a case so dissimilar in its most essential
features to the one before him. The New York decisions being
made on unlike cases, will never be considered as being over-
ruled in this case by Chief Justice Marshall, who certainly had
no such intent or he would have expressed it fearlessly.

It is a painful task to differ from my brethren, but would
be more painful not to give a conscientious opinion. The Insur-
ance Company have no right to depart from the resolution in
which they gave notice that they would resist the claim on its
merits. It implied a waiver of any defect in the preliminary
form, according to the string of decisions heretofore cited; it
misled the assured into a belief of the waiver, so that he took
no steps to get the defect amended; and now, if they may re-
sort back to the preliminary forms, the assured must be totally
excluded from a trial on the merits. Whether the defect was
waived or not should have been submitted to the jury as a ques-
tion of *fact* under all the circumstances and evidence attending
it. I am therefore of opinion that the nonsuit should be set aside
and a new trial awarded.

There was another point argued at the bar, but as the non-
suit was not granted upon it at all, it might be premature to

give an opinion upon it, and therefore I waive it. It will be time enough to decide that, if ever a trial should take place on the merits, and if that should never happen the point is immaterial.

Rule discharged.

NOTE. The Reporter, not having inserted at large the report of the trial in this case on account of its length, adds, upon request, the following note with which he has been furnished.

" No proof was made or offered on the trial to shew that any explanation of the omission to insert an amount in the blank in the certificate, had at any time been given to the company or any of its officers, but near the close of the trial the plaintiff offered to prove by a witness that the clergyman declined certifying to the amount solely upon the ground of not having any such knowledge of the amount of the property consumed as to justify him in making any certificate ; which offer was overruled."

CITED in *Jones* v. *Mechanics Fire Ins. Co.*, 7 *Vroom,* 36-37.