## COUNTY OF ESSEX, NOVEMBER TERM 1850, AT SALEM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY, ⎫
Hon. THERON METCALF, ⎬ Justices.
Hon. RICHARD FLETCHER, ⎭

---

OLIVER UNDERHILL *vs.* THE AGAWAM MUTUAL FIRE INSURANCE COMPANY.

A by-law of a mutual fire insurance company having provided, that in case of loss the insured should, as soon thereafter as possible, deliver to the secretary of the company an account, on oath, of the property lost or damaged, and of the value thereof, at the time of the loss, and enumerating in such account several particulars stated in the by-laws; and a notice of loss was given, which did not embrace all the details mentioned in the by-law, but no objection thereto was taken on that ground, when the same was given, nor any further or more particular information requested, and the insurers declined paying the loss for other reasons; it was held, that the want of more full and particular statements in the notice was thereby waived by the insurers.

The defendants, in an action on a policy of insurance against fire, having introduced evidence, under their specification of defence, that after the date of the policy, the plaintiff's ashes had been deposited in wooden vessels, contrary to a stipulation

in his application for insurance; the plaintiff called witnesses who testified that they had never known the plaintiff's ashes to be deposited in wooden vessels; and upon cross-examination by the defendants, stated that they had never known the plaintiff's ashes to be so deposited since the house was built in 1838; it was held, that the defendants could not thereupon introduce witnesses to prove, that, in 1844, which was before the execution of the policy, wooden vessels were the ordinary places of deposit for the plaintiff's ashes.

A stipulation in an application for insurance against fire, which is afterwards effected, that ashes are kept at all times in brick, is complied with, if the ashes are kept in some mode equally safe.

If property, insured against fire at less than its value, is partly destroyed, the insured is entitled to be paid his whole loss, provided it does not exceed the amount insured.

THIS was an action on a policy of insurance, dated the 4th of June, 1846, by which the defendants caused the plaintiff to be insured for the term of three years, against loss by fire, in the sum of $1200 on his dwelling-house, and $100 on the furniture therein, according to the terms and conditions expressed in the by-laws of the defendants and of their act of incorporation, and subject to ·the lien established by the thirty-seventh chapter of the revised statutes.

The defendants pleaded the general issue, and specified in their defence, that in avoidance of the contract, they should rely, first, upon a misrepresentation in the plaintiff's application for insurance, in respect to the manner and place of keeping his ashes; second, upon a violation of a stipulation in his application as to the manner and material in which ashes should be kept; and, third, upon a change of circumstances affecting the risk.

The case was tried in this court, before *Metcalf,* J., by whom it was reported for the consideration of the whole court.

It was in evidence, and not denied by the defendants, that the plaintiff sustained a loss of the property insured, to the amount, at least, of $1300, by a fire which occurred on the 30th of July, 1847.

The sixteenth article of the defendants' by-laws was as follows:—

"Art. 16. In case of loss, the insured shall as soon as possible deliver to the secretary of this company, a particular account, on oath, of the property lost or damaged, and the value thereof at the time of the loss, and shall state whether he was the sole owner of the same at the time of said loss, and if it is now, was at the

time of said insurance, or has since been incumbered by mortgage, or otherwise, and whether any insurance has subsisted in any other office upon the same, since insurance was effected at this office; the cause or occasion of the fire as far as it is known, and the value of such parts as remain; until which is done, the amount of such loss, or any part thereof, shall not be payable."

In proof of a compliance with the terms of this by-law, three of the defendants' directors were introduced, who testified, that the plaintiff soon after the fire came before the board of directors, at one of their meetings, and gave an account of the loss which he had sustained, and that upon being questioned by the directors, he made statements respecting the manner in which ashes were kept in his house, and that the directors were not satisfied that the company were liable for the loss.

The only other evidence offered by the plaintiff to this point was that he delivered to the secretary of the defendants a paper signed and sworn to by him, of which the following is a copy: —

" To the president and directors of the Agawam mutual fire insurance company, of Ipswich. Gent.: The house owned and occupied by me in this town, insured by you for the sum of twelve hundred dollars, was destroyed by fire on the night of the 30th July, 1847, and damaged to the amount as follows:

| | | | | |
|---|---|---|---|---:|
| House valued at | . | . | . | . | $2500.00 |
| Tools and casks | . | . | . | . | 100.00 |
| Bedclothing | . | . | . | . | 100.00 |
| Provisions and vinegar | . | . | . | . | 150.00 |
| Clothing | . | . | . | . | 100.00 |
| Damage on furniture | . | . | . | 50.00 |
| Furniture burnt | . | . | . | . | 122.00 |
| Cash | . | . | . | . | . | 16.00 |
| Two cords of firewood | . | . | . | 8.00 |
| | | | | 3146.00 |

Windows, blinds saved, doors and remains of house
saved . . . . . 50.00

" I also consider that my furniture insured by your office for one hundred dollars has been damaged to that amount as per schedule attached.

" I certify that the above statement by me is correct, that the fire was occasioned by being set on fire by some persons unknown."

The defendants objected, that a compliance with the sixteenth article of their by-laws was a condition precedent to the plaintiff's right to recover; that the delivery of the paper

above mentioned to their secretary was not a substantial compliance therewith ; and, therefore, that the plaintiff was not entitled to recover in this action ; but the presiding judge overruled the objection.

One of the questions in the plaintiff's application for insurance was the following : — " In what are ashes kept at all times ? " to which the plaintiff answered ; — " Brick."

It was in evidence, that when the plaintiff's house was built in 1838, a brick safe was made in the cellar, in which ashes were deposited ; but that before the year 1844, and also after the date of the policy in suit, the ashes made in the plaintiff's house had not been deposited in the safe, but in other places. The testimony was somewhat contradictory, as to the place and manner of depositing the ashes, after the date of the policy as well as before, and the whole testimony was submitted to the jury under instructions which were not excepted to.

The defendants attempted to prove, that the plaintiff's ashes, after the policy, were sometimes deposited in wooden casks, and it was upon this point that the contradictory evidence was given. Three of the plaintiff's children, between the ages of fifteen and twenty-two, were called as witnesses for him, and testified that they had never known ashes to be deposited in any wooden vessel since their remembrance. On cross-examination they were asked, without objection from the plaintiff, whether, since the building of the house in 1838, and previous to June, 1846, ashes had not been put into wooden casks, or into a certain wooden cask mentioned by other witnesses.

The witnesses answered, that they had never known ashes to be put into any wooden vessel, at any time, since the house was built.

The defendants then offered to prove, that in 1844, " wooden casks were the ordinary places of deposit of the plaintiff's ashes, and that they were put into such casks from the vessels in which they were taken from the fire, and so soon after they were taken from the fire, as to have fire in them." But the judge refused to admit the evidence, on the ground, that a

party, having elicited testimony concerning immaterial facts by cross-examination, cannot then contradict the witnesses as to such facts.

The defendants requested the presiding judge to instruct the jury, that if, upon the whole evidence in the case, they were reasonably satisfied, that wooden casks, within the building insured, were the ordinary places of deposit for ashes, when emptied from the vessel into which they were gathered from the hearth, and if that mode of deposit was more hazardous than the mode of deposit represented in the plaintiff's application for insurance, the plaintiff would not be entitled to recover. But the judge instructed the jury, as to this point, that if the plaintiff's ashes, after the issuing of the policy, were kept as safely in the building insured, as if they had been kept in the mode represented in the application, the plaintiff so far as this point was concerned, would be entitled to recover.

It being in evidence, that the actual value of all the furniture in the plaintiff's house much exceeded the sum of $100, the defendants requested the judge to instruct the jury, that for the purposes of the contract made by the policy, the entire value of all the furniture in the house was to be taken to be $100, and that such proportion only of the $100 insured, as the part destroyed bore to the whole value of the property insured, could be recovered in this suit, unless the whole was destroyed. But the judge instructed the jury, that if the plaintiff was entitled to recover at all, he was entitled to the whole amount of the insurance on the furniture, provided the loss thereon was equal to the sum insured.

The jury returned a verdict for the plaintiff, which is to be set aside, and a new trial ordered, if any of the foregoing rulings or instructions are erroneous ; otherwise judgment is to be entered on the verdict.

*O. P. Lord*, for the defendants.

*N. J. Lord*, for the plaintiff.

DEWEY, J. The first point of inquiry presented by the course of the argument in this case is, whether there has been such neglect, on the part of the plaintiff, to comply with the sixteenth article of the defendants' by-laws, requiring, in case

of loss, that the insured shall as soon as possible give a parti-
cular account thereof, on oath, and prescribing various mat-
ters to be stated in such notice, as to exonerate the defend-
ants from liability. It is said by the defendants, that this
by-law was not complied with, there being no direct state-
ment that the plaintiff was sole owner of the estate insured, or
whether the same was then under incumbrances, or whether a
further insurance had been obtained thereon, at some other
office, since the making of the policy by the defendants.

This whole ground of objection is beyond the matter con-
tained in the specification of defence filed in the case. This
was not relied upon, however, in the argument, but the objec-
tion was met upon other grounds. To some extent, the state-
ment that the plaintiff was owner of the property meets the
objection ; and it is insisted by the plaintiff's counsel, that no
mortgage or incumbrance or other insurance being stated in
the notice, was equivalent to an affirmation that no incum-
brance existed, and that no subsequent policy of insurance
had been made by any other office upon the property.

However this may be, and without expressing any opinion
as to this, the court are satisfied, that it is a good and suffi-
cient answer to the objection now urged to this notice, that no
such objection was taken to the form of the notice, when it
was given, or any further or more particular information
requested ; but the refusal to pay the sum stipulated in the
policy, by the insurers, was placed upon other grounds, and
thereby the want of more full and particular statements in the
notice must be taken to have been waived. This principle of
waiver has been often applied in similar cases ; *Vos* v. *Robin-
son*, 9 Johns. 192 ; *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 385, 401 ;
and in this court very fully in the case of *Heath* v. *Franklin Ins.
Co.* 1 Cush. 257, 264.

2 The second ground of objection to the verdict is the rejec-
tion of certain testimony offered by the defendants, tending to
show " that in 1844 wooden casks were the ordinary places of
deposit of the plaintiff's ashes." To understand accurately
this point, it is necessary to bear in mind particularly the
course of the trial, and the stage to which the proceedings

therein had arrived, at the time the defendants offered to intro-
duce the rejected evidence.   The defendants, under their
second specification of defence, namely, — " a violation of the
stipulation in said application as to the manner in which ashes
should be kept," had introduced evidence tending to show,
that after the date of the policy, the ashes of the plaintiff had
been deposited in wooden casks.   The plaintiff introduced
evidence in reply to this, and called various witnesses who
testified that they had never known the ashes to be deposited
in a wooden vessel.   Upon the cross-examination of these wit-
nesses by the defendants, they were asked, if between 1838
and June, 1846, (the date of the policy,) ashes had not been
put in wooden vessels at any time since the house was built.
The witnesses having answered in the negative, the defend-
ants then offered other witnesses to show, that in 1844 wooden
casks were the ordinary places for the depositing of the ashes.
This evidence could, at this stage of the case, be properly
offered only to contradict or impeach the witnesses thus called
by the plaintiff.   The inquiry by the plaintiff to these wit-
nesses was limited to the state of things after the date of the
policy.   The defendants could not properly open the general
question, but only contradict the answers of the plaintiff's
witnesses, in a material matter asked them on the cross-exa-
mination.   In this stage of the case, and under these circum-
stances, the evidence was properly rejected, and the ruling
upon this point was right.

The next question raised was upon the instructions given
to the jury, and the omission of the presiding judge to adopt
the precise instruction asked by the defendants.   The ruling,
in matter of law, as stated to the jury, was more brief than
that asked for, but, we think, substantially embraced the same
principles.   The right of the plaintiff to recover was to depend
upon his having kept the ashes in some mode that was as safe
as the mode described in the application.   The case of *Hough-
ton* v. *Manufacturers Mut. F. Ins. Co.* 8 Met. 114, furnishes the
doctrine and illustrates it.   It is not necessary to conform to
the precise letter of the application, as to the mode of conduct-
ing all the various details of the business of the establishment.

Other modes equally safe may be used. We think that the ruling was in conformity with the principles which have been sanctioned in various decisions of this court. If the ruling was reasonably liable to the reading of the counsel for the defendants, that is, if the fact of the ashes not having caused the loss by fire, and that the same was obviously attributable to other causes, would of itself justify or warrant the jury in finding, " that the ashes were kept as safely, as if kept in a brick safe," the ruling would not be correct; but we do not so understand the ruling, or consider such to be its proper meaning. We suppose the jury would necessarily understand, that the question of the comparative safety of keeping the ashes could not thus be made to depend upon the event of actual loss, by reason of ashes being kept otherwise than in a brick safe. The inquiry covered the whole length of time, from the date of the policy to the time of the fire, and the point in issue was, in what manner they had been kept during the entire period, or whether in any other mode than that stated in the application. That was equivalent to an inquiry, whether the mode actually used increased the hazard and exposure to loss by fire. If it did, then the jury could not have found that the ashes were kept as safely as if they had been kept in the mode stated in the application.

The only remaining point was not seriously urged by the counsel for the defendants. The law in reference to it is well settled. In fire policies, the insurance covers the entire loss of property by fire, if within the limit of the insurance, and no deduction is to be made, because the entire value of the property, the subject of insurance in part, was much greater than the whole sum insured by the policy. To the extent of the loss, if not beyond the amount of the policy, the party may recover, without any deduction by reason of the fact, that the whole property was not destroyed. *Liscom* v. *Boston Mut. Fire Ins. Co.* 9 Met. 205; *Post* v. *Hampshire Mut. Fire Ins. Co.* 12 Met. 555.

*Judgment on the verdict for the plaintiff.*