## COMMONWEALTH *vs.* NATHAN HOLBROOK.

The payment of a license fee and a tax to the United States under the internal revenue acts does not authorize the sale of intoxicating liquors in this commonwealth in violation of the laws of this commonwealth.

INDICTMENT, found in Norfolk county, for being a common seller of intoxicating liquors. The defendant filed a plea in bar, alleging that he had at the time of the indictment a license of the United States for which he had paid the sum of twenty dollars, and which authorized him to do the acts complained of, and also that he had paid a tariff or revenue duty and tax upon the same liquors to the government of the United States, for the

keeping and selling of which he is complained of in the indict-ment, and that the said tax was paid upon the same liquors, in the same packages, and in the same form and quantity in which he sold the same. The district attorney filed a general demurrer to this plea, and *Rockwell,* J., before whom the case was heard in the superior court, sustained the demurrer, and the defendant waived his right to answer further, and alleged exceptions.

*N. Richardson,* for the defendant.

*Reed,* A. G., for the Commonwealth.

GRAY, J. The defendant does not allege that he was an im-porter, or that the liquors which he is indicted for selling in vio-lation of the laws of the Commonwealth were imported. He contends that having obtained and paid for a license as a retail dealer, and having also paid a tax upon these liquors in the same packages, under the internal revenue acts of the United States, he cannot be punished under the statutes of a state for selling them in the same packages, and stands in the same position in this respect as an importer of foreign spirits who has paid a duty at the custom-house. But the distinction is obvious, and is pointed out in the cases on which the defendant relies. *Brown* v. *Maryland,* 12 Wheat. 441–443. *The License Cases,* 5 How. 574, 577, 583, 588–592, 610, 611, 620, 631.

The reasons why a state cannot tax imported goods in the hands of the importer are twofold: 1st. Because the power of congress to regulate commerce with foreign nations is para-mount, and, at least so far as it has been exercised by congress, cannot be interfered with by the state; 2dly. Because a state is expressly prohibited to lay any tax or duty on imports. Neither of these reasons applies to the domestic and internal trade and business of a state, the regulation of which belongs exclusively to the state. The United States can neither confer nor take away a right to sell the products of domestic industry. Even imports are protected from state legislation only while they are in the original packages in the possession of the importer, not after they have become part of the mass of property of the Commonwealth. And it is for the state, and the state alone, to determine what internal trade and business shall be

lawful, and how and under what restrictions it shall be con ducted.

Congress has indeed the power to levy and collect taxes, duties, imposts and excises on all the property and business of the country. But this power to tax does not in itself involve any power to regulate. The power to regulate is distinct from, and not subordinate to, the power to tax. Foreign commerce, congress may both regulate and tax. Domestic traffic within the limits of a state, it may tax, but it cannot regulate. A state law taxing imports, or requiring the importer to pay the state for a license before selling them, is void, not merely because congress has levied a duty on them, but because congress may regulate and authorize, and has regulated and authorized, their introduction. If the power of congress to tax what it cannot regulate took away from the state the power of regulation, the extraordinary result would follow that every branch of domestic traffic or employment which congress should see fit to tax would be removed from all control or regulation whatever.

The license which the defendant sets up in his plea did not, by the very terms of the act of congress under which it was granted, and according to a decision already made by this court, authorize him to exercise any trade or occupation in violation of the laws of the Commonwealth. U. S. St. 1862, *c.* 119, §§ 64, 67; 12 U. S. Sts. at Large, 455, 459. *Commonwealth* v. *Thorniley,* 6 Allen, 445. The reasons given in that case apply also to the defence sought to be established by reason of the payment of a tax to the United States.

It is true that the provisions of the act of congress, imposing this tax, to which the defendant has referred us, do not contain a saving of the laws of the state. U. S. St. 1864, *c.* 173, §§ 55, 57, 64, 94. But its provisions as to licenses are like those of the act of 1862, with this clause added in § 78, " that no license hereinbefore provided for shall, if granted, be held or construed to exempt any person carrying on the trade, business or profession, specified· in said license, from any penalty or punishment provided by the laws of any state for carrying on such trade, business o profession within such state ; " so that, in order to maintain this

defense, it would be necessary to hold that payment of a tax to the United States would imply an exemption from state authority, which a direct license from the United States to sell the goods taxed would not give.

This seems to the court to be a case to which the words of Chief Justice Marshall in *Cohens* v. *Virginia,* 6 Wheat. 443, are peculiarly applicable. " To interfere with the penal laws of a state, where they are not levelled against the legitimate powers of the Union, but have for their sole object the internal government of the country, is a very serious measure, which congress cannot be supposed to adopt lightly, or inconsiderately. The motives for it must be serious and weighty. It would be taken deliberately, and the intention would be clearly and unequivocally expressed."

We are therefore unanimously of opinion that the payment of a license fee and a tax to the United States under the internal revenue acts does not protect the defendant from punishment for violating the criminal laws of the Commonwealth.

*Exceptions overruled*