Vos
v.
Robinson.

## Vos and Lightbourne *against* Robinson.

*Where the insured claimed for a total loss of a vessel, and 30 days previous to the commencement of the suit, exhibited the protest of the captain, to prove the loss; but not the register or other proof of interest, to the underwriters, who made no objection to the proofs, but refused to pay, solely on the ground of a deviation, it was held, that this was an admission of the plaintiffs' interest, or, at least, a waiver of the necessity of producing proof of it.*

*A vessel was insured " at and from Port Plata, St. Domingo, to New-York;" and in going from Port Plata to Susua, which is in the district, bearing the name of Port Plata, and about 18 miles east of*

THIS was an action on a policy of insurance on the *schooner Maria*, " at and from *Port Plata*, *St. Domingo*, to *New-York*." The plaintiffs claimed for a total loss, which was averred, in the first count of the plaintiffs' declaration, to have happened as follows: " While the said vessel was at *Port Plata* aforesaid, to wit, at *Isabella, within the district of Port Plata*, she was, by and through the violence of the winds, &c. forced and cast upon rocks, and bars there, and was, then and there, broken, shattered, bilged and totally lost." In the *second count*, the plaintiffs averred, that while the vessel was at *Port Plata*, she was, by the force of winds, &c. totally lost.

The cause was tried at the *New-York* sittings, before Mr. Justice *Thompson*, the 15th *June*, 1811.

Thirty days previous to the commencement of the suit, the agent of the defendant, and the other underwriters on the same policy, received from the plaintiffs the protest of the captain of the vessel, stating the loss; but the register of the vessel was not then produced, nor until it was given in evidence at the trial, by which it appeared that she belonged to *Vos*, one of the plaintiffs. When the *protest* was shown to the underwriters, they made no objection to the sufficiency of the preliminary proof; but refused to pay for a total loss, on the ground of a *deviation*.

The vessel sailed from *Port Plata*, on the 30th *November*, 1809, to go to *Susua*, to procure mahogany there. Her papers were left at the marine office at *Port Plata*, and a permit was granted her to go to *Susua*, for her cargo, and it was necessary for her to return to *Port Plata*, in order to obtain a *clearance* for *New-York*. After leaving *Port Plata*, the vessel

he port, in order to take in a cargo of *mahogany*, she was driven into the road or bay of *Isabella*, in the same district, and there lost. She had a *permit* from the custom-house at *Port Plata*, to go to *Susua*, to obtain her cargo, and would have been obliged to return to *Port Plata* to pay the duties, and get a *clearance*, such being the usual course of trade there. The custom-house and port of entry are confined to the particular place, called *Port Plata*, and the district, for the purposes of *revenue*, which bears that name. extends nearly a hundred miles along the coast of *St. Domingo*. *Port Plata* is a safe harbour, but *Susua* and *Isabella* are *open roads*, and dangerous while particular winds prevail. It was held, that *Port Plata* proper, and the district of *Port Plata*, were different objects, and the perils distinct; and that the going from *Port Plata* to *Susua* was a *deviation*. And that nothing but a clear, well settled and well understood usage of trade, would be sufficient to include both objects, under the simple name of *Port Plata*.

ALBANY,
August, 1812.

Vos
v.
ROBINSON.

was carried, by adverse winds and currents, 12 *leagues* to the westward of that place; and arrived at *Isabella*, on the 6th *December*, and there took in additional ballast, and put to sea, in order to reach *Susua*, but was again driven back to *Isabella* on the 8th *December*. She again sailed for *Susua*, but was again forced back, and put into *Isabella*, on the 10th *December*, where she was shipwrecked in a violent storm. The harbour of *Susua* and port of *Isabella*, are both in the district of *Port Plata*.

The *district* of *Port Plata* extends from the river *St. Juan* near the *Old Cape*, to the river *Massaue* near *Fort Dauphin*. The whole district is called *Port Plata*. The custom-house or marine office, for the whole district, is at *Port Plata*, where all the inhabitants of the district do duty at the fort. The chief produce of the district is *mahogany* and *fustic*, and these woods are procured along the coast.

Cargoes are never taken on board at *Port Plata*, but vessels always enter at that port and proceed to *Susua*, which is about 4 leagues east, or along the coast, to procure their cargoes, and then return to *Port Plata* to pay the duties, and obtain a clearance. That port is a good harbour, and has anchorage ground. *Susua* and *Isabella* are both open roads or bays. *Isabella* is about 18 miles west of *Port Plata*. *Susua* is about 18 miles east of that place; and when the wind is from the northwest or north, it is difficult to get out to sea, and there is great danger of being driven on shore. The vessel had made about half her passage to *Susua*, when she was driven to leeward, by an easterly wind, and forced into port *Isabella*.

Two sea captains, one of whom had been above 18 months at *Port Plata*, and both were acquainted with the district and coast, testified, that the *district* of *Port Plata* is so called, because there is no other port of entry or custom-house within it. *Samana* is the next port of entry, which has, in like manner, a district of country attached to it. The city of *St. Domingo*, which is another port of entry, forms another district; and these are the only ports of entry in the *Spanish* part of the island, which is divided into districts, in reference to the custom-house duties; each being a revenue district, and taking its name from the port of entry within it. The witnesses did not consider a vessel arriving at *Susua* or *Isabella*, as arriving at *Port Plata*, to which place she must actually go; and if desirous to proceed to any other place

ALBANY, within the district, she must obtain a *permit* from the custom-
August, 1812. house for that purpose.

Vos
v.
ROBINSON.

Several underwriters and officers of different insurance com-
panies, in the city of *New-York*, testified, that they had frequently
insured vessels engaged in trade to the city of *St. Domingo*, and
if the insured wished to load on the coast, it was the practice to
insert express permission in the policies for that purpose; and
that for granting such a permission, an additional premium was
demanded.

It appeared also, that it was very rarely, if ever, that a cargo of
woods could be obtained at *Port Plata;* but it was the course of
the trade, to go along the coast to obtain cargoes.

A verdict was found for the plaintiffs, subject to the opinion of
the court, on a case containing the above facts.

*Anthon* and *Hoffman*, for the plaintiffs, contended, that the de-
fendant having refused to pay, solely on the ground of a *deviation*,
he had admitted the sufficiency of the preliminary proofs.*

* 7 *Johns.*
*Rep.* 315. 8
*Johns. Rep.*
307.

As to the alleged *deviation*, they contended, that the plaintiffs had
merely pursued the usual custom of the trade, in going from *Port
Plata* to *Susua* to obtain a cargo. The custom of the trade
was peculiar, on account of the particular form and situation of the
coast, and had been fully proved.

Underwriters are presumed to know the usage of the trade in
which they insure, and are bound by such usage.† In the case of
*Noble* v. *Kenworthy,*‡ Lord *Mansfield* said, every underwriter
is presumed to know the practice of the trade he insures. If he
does not know it, he ought to inform himself. It is no matter, if
the usage has been but for a year.

† *Marsh.* 259
—270.
‡ *Doug.* 492.
1 *Camp. Rep.*
503.

Again, in *Thellusson* v. *Fergusson,*§ Lord *Mansfield* said, that
the words " *at* and from *Guadaloupe*," comprehended the whole
island, and protected the ship in going from port to port, round
the coast of that island. So, in the present case, at and from
*Port Plata*, comprehends the district of *Port Plata*.

§ *Doug.* 346.
*Marsh.* 355.
358.

*Wells*, contra, insisted, 1. That, as there had been no preliminary
proof of *interest*, the plaintiffs were not entitled to commence their
action.

2. The plaintiffs had averred in their second count, that the
vessel was lost at *Port Plata*, which ought to have been proved.
There is a particular port or harbour called *Port Plata*, which

gives its name to a *revenue district* of considerable extent. The ALBANY, August, 1812.
port and district of *Port Plata* are as distinct from each other, Vos v. Robinson.
as the port of *New-York* and the district of the port of *New-York*, under our *revenue laws.* The insurance in this case is,
at and from the *port* or *harbour* of *Port Plata*, not from the *district* of *Port Plata*.

Next, as to the usage of trade, in going along the coast to obtain cargoes. Usage of trade forms a part of the law of a country; and the law of a country is not to be proved by witnesses accidentally picked up in the street. Only two of the witnesses, casually met with, had ever been on the coast.

*Marshall** says, "Witnesses may be examined to prove a *usage* explanatory of a clause in the policy; but their opinion of its meaning is not evidence." [* *Marshall on Ins.* 307. and *Condy's* note. *Winthrop* v. *Union Ins. Co. ib.*]

Again, "The force of usage is not to destroy the law. Usage is to be consulted only where the law is doubtful. Where the law is clear, it must prevail. The law is permanent, but usages sometimes change, and often disappear with the circumstances which gave them birth."

The trade to *Port Plata* is a *recent* trade for *American* vessels. This appears to have been the first vessel from the *United States*, engaged in that trade. The presumption of a knowledge of the usage of the trade cannot, therefore, be fairly brought home to the defendant. And *usage of trade* is allowed to govern, merely because parties are presumed, from the circumstances, to know it, and form their contracts accordingly. In *Smith* v. *Wright*,[†] the court said, "The true test of commercial usage is, its having existed a sufficient length of time to have been generally known, and to warrant a presumption that contracts are made in reference to it." [† 1 *Caines' Rep.* 43 45. and see *Mar. tin* v. *Delaware Ins. Co. Condy's Marshall,* 186. note (20).]

The testimony as to the uniform practice, in insuring the trade to the city of *St. Domingo*, shows that where it is intended to trade along the coast, a permission is inserted in the policy, but not without an additional premium. The port and district of *Port Plata* are different places, and must be accompanied with very different risks.

*Per Curiam.* The two points raised upon this case, are,

1. That the preliminary proof was not sufficient.

2. That there was a deviation, and the vessel lost in consequence of it.

ALBANY,
August, 1812.

Vos
v.
ROBINSON.

1. The protest of the captain, stating the loss, was produced to the agent of the defendant. The register, proving the plaintiffs' interest in the vessel, was not produced, but as the underwriter made no objection to the deficiency of the preliminary proof, and placed his refusal to pay, specifically and solely on the ground of deviation, he must be deemed to have admitted the plaintiffs' interest in the vessel, or to have waived the necessity of producing the proof of it.

2. The question on the merits is, whether going to *Susua* was not a deviation. The voyage insured was *at and from Port Plata, St. Domingo, to New-York;* and the vessel was shipwrecked and lost in going from *Port Plata* to *Susua.* She had a permit from the government at *Port Plata* to go there, for her loading of mahogany, and would have been obliged to return to *Port Plata* for her clearance. This *Susua* is a bay or open road, about 4 leagues east of *Port Plata,* and is dangerous when certain winds blow; and it is included within the district of *Port Plata,* which district stretches for 100 miles along the north coast of *Spanish St. Domingo.* The very statement of the fact is enough to show, that sailing from *Port Plata* to *Susua* was not sailing from *Port Plata* to *New-York,* for *Port Plata* and the revenue district of *Port Plata,* are very distinct objects, and the customhouse and port of entry are confined to *Port Plata* proper. The perils must be very distinct, and very greatly increased between a vessel sailing from *Port Plata* to *New-York,* and from *Port Plata,* along that extensive and dangerous coast, which the district embraces, and then to *New-York.* Nothing short of a most clear and well settled and well understood usage, would be sufficient to include both objects in the simple name of *Port Plata.* On this point the evidence in the case is decidedly against any such usage or understanding of the trade. It would appear, from the case, that a liberty to trade on the coast included in the district, would not be granted without an increased premium, and would require a special clause for the purpose.

The defendant is, accordingly, entitled to judgment.

*Judgment for the defendant.*