## CURRIER *v.* CONTINENTAL LIFE INSURANCE CO.

When a debtor delivers money to be transmitted to his creditor, in accordance with authority given him so to do by his creditor, and the money is lost upon the way, it is the loss of the creditor.

The plaintiff was authorized to send money to the defendants by express, and there were three express-carriers between the residence of the plaintiff and the place of business of the defendants in this state: the plaintiff sent the money for the last premium due upon his life insurance policy by one of these expressmen, who embezzled the money and ran

away.  *Held*, that this was a sufficient payment of this premium to the defendants.

Corporations are held to be subject to the same presumptions and implications from their corporate acts, or the acts of their agents, without either vote, deed, or writing, as in the case of natural persons.

A corporation may waive any condition inserted in its regulations or by-laws for the benefit of the company; and the acts of such company, or of its agents, are competent evidence of such waiver.

This was a bill in equity, by John Currier against the Continental Life Insurance Company of Hartford, Conn.

By policy, dated November 14, 1865, the defendants assured the life of the plaintiff's wife, in the amount of $5000, to be paid to the plaintiff.  The plaintiff was to pay an annual premium of $572.70, on or before November 15 in each year, for five years.  He paid the first four premiums in person to the defendants' agents, the first payment being made at his own house, in Salem, N. H., when he received the policy, or before that time; the second payment being made November 13, 1866, at the same place; the third, at Boston, November 15, 1867; the fourth, at Boston, November 15, 1868.  Payment of the first is acknowledged in the policy; for the other three payments he received formal receipts.  December 3, 1869, at East Salisbury, Mass., the plaintiff delivered the amount of the fifth premium to Laws, an expressman, to be carried to the defendants' agent; but the expressman embezzled the money.  The plaintiff prays a decree that the defendants apply the amount in satisfaction of the fifth premium, and credit him with payment in full of said premium, and give the plaintiff a renewal receipt, and treat said policy as a policy paid up in full; and for general relief.  It was stipulated in the policy, that if the plaintiff did not pay the five premiums when due, the policy should be void; and that when the policy should become void, all payments made thereon should be forfeited to the defendants.  The plaintiff claims, 1. That he was authorized to send the money by express at the risk of the defendants; that delivery to the express was payment to the defendants; and, 2. That the time of payment was extended a reasonable time beyond November 15, 1869, and the forfeiture waived.  Upon these two points, the facts are:

I.  October 28, 1869, one Loomis (an agent of the defendants, at Portsmouth, N. H.) wrote to the plaintiff (then living at East Salisbury, Mass.) enclosing a notice of the fifth premium, and saying,— "Please forward your prem. on pol. No. 478 to the Portsmouth office. The two past years the Boston office has charged us a com. for collecting; by paying here, or at the home office, the company saves the com.  You can forward the prem. by bank check, or your own private check, on any bank or institution, and can be collected through the bank here; or, you can send by express."  The plaintiff sent the money by express, relying upon this letter, and understanding that the money

was at the risk of the defendants when delivered to the express; and there was no fraud, bad faith, or want of ordinary and reasonable care on the part of the plaintiff.

[The plaintiff took no receipt or other acknowledgment of the express-carrier, and made no attempt to notify the defendants of the delivery of the money until December 11, when he wrote to Loomis stating that he had sent the money by express, and asking if it had been received. There were then three different express-carriers upon the railroad between East Salisbury and Portsmouth, and Loomis, or the defendants, did not know until some days later to which express the money had been delivered. Soon afterwards the plaintiff caused the expressman, Laws, to be prosecuted in Massachusetts for embezzling the money, and on the —— day of ——, 1870, wrote to Loomis, sending a copy of a letter from the district attorney of Essex county to the plaintiff, which, with all the written and printed evidence used at the trial, may be referred to as a part of the case. The fact of the delivery of the money to the express by the plaintiff was in dispute between the parties. The plaintiff did not pay or offer the express anything for transporting the money.]

II. The first four premiums had been paid by cash and note, half each. The notice of the fifth premium was as follows: " The 5 premium of $572.70, on your policy No. 478, will be due the 15 day of Nov. 1869 ; interest on outstanding notes, $68.72—$641.42 ; less dividend of 1868, 50 per ct. on ordinary rate, $87.30. Cash due, $554.12. Respectfully yours, SAMUEL E. ELMORE, Secretary ; GEO. N. LOOMIS, Agent. ☞ Unless the renewal premium is paid on or before 12 o'clock noon, of the day on which it is due, the policy is forfeited, and the company is under no obligation to renew it; but, upon satisfactory evidence being furnished that the insured is in perfect health, the risk may be continued, at the entire option of the company."

The plaintiff was not satisfied with this notice, for two reasons. He objected, first, that it required him to pay all cash, instead of half cash and half note. His second and chief objection was to the method of computing the dividend. A short time after receiving the notice, and before November 15, 1869, the plaintiff went to Loomis, and desired explanations on those points, but Loomis could give none satisfactory to him; whereupon the plaintiff said he desired time to examine the subject and to consider what he would do, and asked Loomis if he should be particular about the time of payment. Loomis informed the plaintiff that he had no authority to extend the time, or to waive a forfeiture, and showed him his instructions and the regulations of the company to that effect.

[These regulations were contained in a small printed book, of which the plaintiff had a copy, he having before acted as an agent of an agent of the defendants in soliciting a few applications for policies. The attention of the plaintiff was expressly called by Loomis to the following section on pages 27 and 28 of the book: " Premiums are due and payable at the office of the company in Hartford, but for the conven-

ience of policy-holders, they may be paid to an agent of the company; but no receipt is binding unless signed by the president and secretary, and should be countersigned by the agent who receives the money." A conditional receipt, similar to the following, may be used by an agent:

### "CONDITIONAL RECEIPT.

"Received —— —— 186 — from —— —— $ —— stated to be the amount of a premium due this day on policy No. — issued by the Continental Life Insurance Co., upon the life of —— —— for the sum of $ —— and in favor of —— ——. Said alleged premium is held by the undersigned until application can be made to the company to accept the same and forward their receipt. When obtained, this receipt is to be surrendered therefor; if not obtained, the money is to be refunded."

"Agents are not authorized to make, alter, or discharge contracts, waive forfeiture, or bind the company in any way," etc.

And on page 23, of the same book, are the words,—"Lapsed policies may be restored at the option of the company, but solely as an act of grace or courtesy, upon payment of all premiums past due, with interest thereon; but, whenever renewal premiums are received after the day on which they are due, it is with the express understanding that the party is then in sound health."]

Loomis further told him that it was not the custom of the company to take advantage of a forfeiture for non-payment of premium in his class when payment was made within a reasonable time after it was due; that he had never known the company to insist upon the forfeiture in such a case; and that he then had charge of some cases in which the premiums were overdue, which would probably be paid by the insured. The precise words of this conversation cannot now be remembered by the parties or proved by witnesses. Loomis intended to give the plaintiff to understand that it was the usage of the defendants, upon payment of overdue premiums, and a certificate of continued health, to waive the forfeiture; that the defendants were not bound to do so; that he had no authority and did not undertake to bind them, or to bargain with the plaintiff that they would do so; but that, as a matter of fact, they undoubtedly would do so in his case as they always did in other like cases. The plaintiff understood, and an ordinary man would have understood, and would have been warranted in understanding, from the statements of Loomis, that although, by the express terms of the printed regulations of the company, Loomis had no authority to make a formal bargain binding the company to an extension of time or a waiver of a forfeiture, yet the uniform usage of the company was to receive premiums within a reasonable time after they were due, when there was no material change in the health of the person insured; that the plaintiff could safely rely on this usage, and take time to examine the subject and consider what he would do, and defer the fifth payment for a reasonable time after November 15, without running any risk of forfeiture if his wife should continue in good

health; that the company would receive the premium under such circumstances without objection. The plaintiff understood, and was reasonably justified in understanding, the statements of Loomis, not as an absolute undertaking to extend the time, or an express promise to waive the forfeiture, but as an assurance of a uniform usage of the company that would not be departed from in his case; but this distinction was not drawn in the plaintiff's mind as distinctly as it is here stated. He testified that he understood the practice of the company, in regard to forfeitures for non-payment at the stipulated time, to be the opposite of their theory.

But for his understanding, derived from the statements of Loomis, the plaintiff would have paid the fifth premium on or before November 15. He was induced, by his understanding of Loomis's statements, to delay sending the money till after November 15. December 3, the day he sent it, was within a reasonable time.

He wrote to one Hinckley (a relative of the plaintiff and an agent of the defendants in Vermont, and who had received his application for the insurance) for the explanations which he desired, but received no satisfactory answer. November 22, 1869, he wrote to Elmore, the secretary of the defendants at Hartford, for explanation, saying at the close of his letter,—" I have deferred the payment of my fifth premium until we come to a proper understanding of the subject. Mr. Loomis suggested that no advantage would be taken by the company while this question was being considered." November 30, 1869, Elmore answered, giving lengthy explanations on the subject of dividends, and informing him that he could pay the fifth premium in the usual way if he preferred,—that is, half cash, half note,—but making no other allusion than that to extension of time or waiver of forfeiture.

The plaintiff delivered to the express the whole amount in cash, relying, as to extension and waiver, upon his understanding derived from the statements of Loomis and the letter of Elmore; and if the express had delivered the money to Loomis, the plaintiff would have received a renewal receipt, and the defendants would have treated the policy as in force without raising any objection. The plaintiff's wife continued, and still continues, in perfect health; and satisfactory evidence of that fact would have been furnished the defendants by the plaintiff, if he had understood it was desired or necessary. He would also have paid interest on the premium, if he had understood that interest was demanded or expected. In his subsequent interviews and correspondence with Loomis, no certificate or evidence of health, or interest, was demanded, but the defendants, by refusing to give him a receipt for the fifth premium, and insisting upon a forfeiture, on the ground that they had not received the money delivered by the plaintiff to the express, waived their right to such certificate, evidence, and interest, if they would otherwise have been entitled thereto.

Before the commencement of this suit, the defendants, though reasonably requested, neglected and refused to do what the plaintiff now seeks by this suit to compel them to do.

The court reserved all questions of law and fact arising upon the foregoing case, and involved in these two questions :

1. Is the money, delivered by the plaintiff to the express, to be considered as paid to the defendants?

2. Is the policy forfeited by the delay from November 15 to December 3 ?

On the ground on which the case was tried, if the first question is answered in the affirmative and the second in the negative, there should be a decree for the plaintiff; otherwise the bill should be dismissed, unless the court should see cause for a new trial. The parts of the case enclosed in brackets are portions of the evidence inserted at the defendants' request. Case reserved.

*Hatch*, for the defendants.

I. The fifth premium was never paid to the defendants.

1. The letter of Mr. Loomis did not authorize payment to Laws. It simply indicated a mode of conveyance, but did not imply that the conveyance was to be at the risk of the defendants. The words " at our risk" cannot be added to his letter without changing the meaning. If the plaintiff had asked, " How can I send the money ? " the answer would naturally have been in the same words. If Loomis had added, " or you can send it by some neighbor, or by your wife, or you can take the stage or railroad cars at Salisbury and bring the money," will it be contended that the defendants thereby assumed the risk of the conveyance ? The words, " you can send it to me in some manner," would hardly have been more general than the words actually used. Had the defendants intended to assume the risk of the transportation, Mr. Loomis would naturally have used the words " at our risk." He would have indicated some definite agent, by naming one of the three express carriers, and the like. The words " by bank check, or your own private check, on any bank or institution," cannot be construed to mean that the sending of such a check would be payment before the check itself should be paid.

This is not like the case where the purchaser of goods, &c., directs them to be sent by express, because such a request is for something to be done for his own benefit, and it is equivalent to an order that delivery be made to the carrier. If the order was, " Deliver at my store, in Portsmouth—you can send by ship or railroad," the latter words must be taken to be intended only to give information, not to change the place of delivery. And in the case of goods sold, though the delivery to the carrier may be sufficient to change the property of the goods, it by no means follows that they are to be carried at the risk of the buyer.

The plaintiff retained power over his money, and could have stopped it,—can now stop it,—at any time before it reaches the defendants. He did, in fact, sue Laws for the money in his own name. See plaintiff's letter to Loomis, referred to in the case.

2. We respectfully urge (as the questions of fact are reserved) that

the plaintiff did not understand that the money was at the risk of the defendants. He pursued Laws for the money, and the letter referred to proves that he regarded the loss as his own, not as the defendants'.

3. The plaintiff did not take the precautions necessary to enable him to charge the lost money to the defendants. It was disputed at the hearing whether the money was delivered to Laws at all.

The plaintiff did not pay anything for the transportation of the money, and therefore did not send the defendants the full amount due. He took no receipt from the carrier. He sent the money December 3, from Salisbury, within twenty miles of Portsmouth, yet he made no attempt to notify Loomis until December 11, and then did not name the carrier. The defendants had no notice of the sending for two weeks. It is reasonable to suppose (and the fact is) that the money was lost by this neglect. The defendants certainly lost thereby the opportunity to demand it of Laws before he had squandered it.

4. But in fact, Mr. Loomis had no authority to stipulate that the money could be sent to him by any conveyance at the defendants' risk, and the plaintiff knew it. The receipt of Mr. Loomis himself would not be evidence of payment, and the plaintiff is entitled to be credited for the premium only when he obtains the " president and secretary." This rule is reasonable: the plaintiff had notice of it, agreed to it, and is bound by it; yet payment to an express-carrier at the risk of the defendants would wholly abrogate it.

5. The letter of October 28 related only to the payment of the money in the ordinary course, and on or before November 15. When the plaintiff undertook to negotiate for a different and later payment, and under a different rule of the company, the original license (if Loomis's letter was such) no longer applied. *Wakefield* v. *Lithgow*, 3 Mass. 249.

6. Elmore's letter refers to payments under the rules of the company ; and it contains no license to send by express, and no waiver of the regulations stated in the case.

II. The policy was forfeited by the delay of payment. Mr. Loomis had no authority to extend the time, nor had Elmore. Neither of them undertook to do it. The plaintiff acted with his eyes open, and deliberately relied upon " the option of the company " " solely as an act of grace and courtesy." This he cannot now convert into a legal obligation.

The case finds that the plaintiff relied upon what he understood Mr. Loomis to say was a uniform usage of the defendants. But there is no evidence that Mr. Loomis had any authority to make such a statement, or that any such usage in fact existed.

If it did exist, the plaintiff can have no advantage of it but as an act of grace at the option of the company, as all other policy-holders must have done before him. Such a usage, like the option itself, is of imperfect obligation, and cannot be enforced by suit at law.

The plaintiff has never performed the conditions necessary to entitle him to the restoration of his policy, at the option or according to any alleged usage of the company.

He is to offer " satisfactory evidence that the insured is in perfect health " or " sound health." The case finds that she was and is in perfect health; but we respectfully submit that the company have reserved to themselves the right to judge, to inquire, inspect, and cross-examine, and to be satisfied with the evidence on this point. None has been offered to them. The plaintiff cannot say that he has been denied the grace and courtesy of the company until he asks for it in the form prescribed. The plaintiff was bound to pay interest on the premium part due, equal in the present case to $1.66 for the eighteen days before December 3. He did not include this interest in the sum sent to Laws, though he knew the rule. He has never offered to pay it since; Loomis had not the right to waive it; and we respectfully submit, that, by denying that they had received any part of the fifth premium, or that payment to Laws was not payment to them, and by insisting that the policy is forfeited, the defendants have not, in law or fact, waived any right to which they would otherwise have been entitled. And these acts of the defendants happened long after the plaintiff had forfeited the policy by non-performance, and could not alter the position in which the plaintiff had placed himself.

The questions, whether the plaintiff is now entitled to treat the policy as paid up under the first four payments, as provided in the policy, or whether he can recover back any or all of his payments upon the election of the defendants to treat the policy as forfeited, do not arise in this suit.

*H. Bingham*, for the plaintiff.

I. In this case all questions of law and fact arising upon it as drawn, and involved in two questions, are reserved.

The first question is this: Is the money, delivered by the plaintiff to the express, to be considered as paid to the defendants ? The case finds that in the notice of the fifth premium, given to the plaintiff by the defendants' agent (to pay which premium the money in question was delivered to the express), was the following direction,—viz., "You can forward the premium by bank check, or your own private check, on any bank or institution, and it can be collected through the bank here; *or, you can send by express*." The case also finds that the plaintiff sent the money by express, in good faith, relying upon that direction, and understanding that the money was at the risk of the defendants when delivered to the express.

Upon this state of facts we apprehend there can be no question that the money, when it was delivered to the express, became the property of the defendants; and if it became their property, of course it was a payment to them, and its embezzlement by the expressman their loss. The cases uniformly hold it to be the law, that when a debtor delivers money to be transmitted to his creditor, in accordance with authority given him so to do by his creditor, the loss, if any there be, is the loss of the creditor. Chitty on Cont. 750; Parsons on Cont.,

Vol. II, 132 N. C ; Greenl. Ev., Vol. II, sec. 525; Starkie's Ev. 1089, Vol. III ; *Wakefield* v. *Lithgow,* 3 Mass. 249 ; *Kington* v. *Kinyton,* 11 M. & W. 233; *Warwicke* v. *Noakes,* Peake's R. 67. So the delivery of goods by the vendor to a common carrier, in accordance with the order of the vendee, operates as a delivery to the vendee, and the carrier is the agent of the vendee and not of the vendor ; and the loss of the goods is the loss of the vendee and not of the vendor. Story's Cont., secs. 804 and 806 ; Parson's on Cont., Vol. I, 445 ; Chitty on Cont. 484–6, 439–40 ; Chitty's Pl. 6, 7 ; Kent's Com., Vol. II, 579, *et seq.;* Greenl. Ev., Vol. II, sec. 212 ; *Gassett* v. *Godfrey,* 26 N. H. 415 ; *Woolsey* v. *Bailey,* 27 N. H. 217 ; *Smith* v. *Smith,* 27 N. H. 244 ; *Garland* v. *Lane,* 46 N. H. 245 ; *Orcutt* v. *Nelson,* 1 Gray 536 ; *Cook* v. *Ludlow,* and note, 2 B. & P., N. P. ; *Dutton* v. *Solomonson,* 3 B. & P. 584 ; *Lickbarrow* v. *Mason* 2 D. & E. 63 ; *Craft* v. *Pitman,* 1 Marsh 269 ; *Godfrey* v. *Furzo,* and authorities there cited, 3 P. W. 185 ; *Homer* v. *Wright,* 2 Starkie N. P. 33. And generally we regard it as a self-evident proposition of law, that whenever a consignor consigns goods or money to any mode of conveyance, by the authority and in accordance with the directions of the consignee, the risk thereupon, during transmission, is the risk of the consignee, precisely the same as it will be when the same goods or money come into his personal possession and control.

II. The second reserved question is, Is the policy forfeited by the delay from November 15 to December 8 ? We say not, because the defendants gave the plaintiff to understand that they would waive their right to insist upon a forfeiture, and did, in fact, so waive it. The case finds that Loomis, the agent of the defendants, made such statements to the plaintiff that the plaintiff understood a waiver, and was justified in so understanding ; and that the plaintiff, but for such statements, would have paid the premium on or before November 15. It also finds that Elmore, the secretary of the defendants at Hartford, Conn., wrote a letter on the 30th day of November, fifteen days after the forfeiture took place, if there was one, and only three days before the payment of the money to the express, in reply to a letter from the plaintiff calling his attention to the matters that had delayed the plaintiff in paying the premium, and expressly calling his attention to the forfeiture and waiver of it,—and in this letter, so written on the 30th day of November, the secretary states in what way the plaintiff may pay his premium, and makes no claim or allusion to any forfeiture. These facts show conclusively that the plaintiff understood, and the defendants' agent, Loomis, in New Hampshire, understood, and the defendants' secretary at Hartford, Conn., understood, that the forfeiture was waived, and that the plaintiff, on the 3d day of December, had the right to pay his premium with the same effect as he had on the 15th day of November. The books are full of authorities showing that where a party has waived a forfeiture stipulated for in his behalf in the contract, in the manner these facts show the defendants in this case have waived the alleged forfeiture, he is thereby estopped from setting

up such forfeiture.  *Atlantic Ins. Co.* v. *Goodall*, 29 N. H. 182–8; *Hale* v. *U. Mu. Fire Ins. Co.*, 32 N. H. 295; *Glidden* v. *Unity*, 33 N. H. 577; *Atlantic Ins. Co.* v. *Goodall*, 35 N. H. 328–37; *U. Mutual Fire Ins. Co.* v. *Keyser*, 32 N. H. 316; *Lisbon* v. *Bath*, 23 N. H. 2; *Barnes* v. *Company*, 45 N. H. 27; *Pierce* v. *Ins. Co.*, and cases cited, 50 N. H. 302; *Lyman* v. *Littleton*, 50 N. H. 42; *Heath* v. *Franklin Ins. Co.*, 1 Cush. 257; *Clark* v. *N. E. Fire Ins. Co.*, 6 Cush. 342; *Vas* v. *Robinson*, 9 Johns. 192; *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 401; *McMasters* v. *Westchester Ins. Co.*, 25 Wend. 379; Angell & Ames on Corp. 216; Angell on Insurance, sec. 242; Kent's Com., Vol. II, 290, and authorities there cited.

SARGENT, C. J.  Certain facts are found by the court upon evidence which was considered.  These facts are stated, and they raise certain questions of law, which are proposed for the consideration of the court. The policy by which the life of the wife of the plaintiff had been insured was to be paid for in five annual premiums, as it seems, half cash and half note.  Four of these had been paid seasonably, and receipted for; the last payment was sent, all in cash, by express, December 3, 1869, to the defendants, when, by the terms of the contract, it was due the 15th of November previous.

The first question raised is, "Was this money, delivered to the express by the plaintiff, to be considered as paid to the defendants? Loomis, the defendants' agent at Portsmouth, wrote to the plaintiff notifying him of his fifth premium, and requesting him to forward it to Portsmouth instead of paying it at Boston, as he had done for the last two years, for the reason that the company would in that way save a commission for collecting.  He then states to him, "You can forward the premium by bank check, or your own private check, on any bank or institution, and can be collected through the bank here; or, you can send by express."  Any bank check or private check would answer, provided it could be collected through the bank at Portsmouth.  We think this was evidently the intention of Loomis,—that this is the interpretation of the letter: "We will receive anything in payment on which we can raise the money at a bank here, or you can send the money by express;"—and the case finds that the plaintiff did send the money by express; that he relied upon this letter, understanding that the money was at the risk of the defendants after delivery to the express; and that there was no fraud, bad faith, or want of ordinary and reasonable care on his part.

Loomis evidently assumed, and we may well assume, that without any notice and special request this premium would be paid in Boston as the last two had been, and he had a special object, which he states, for having the money paid at Portsmouth;—hence these directions. And if he (Loomis) was asking the plaintiff to put himself to an inconvenience for the sake of accommodating the company and enabling them to save a commission upon the money, they might well be willing to take a little trouble in getting a check cashed at the bank, or even to pay the expressage on the money—say seventy-five cents—rather

than to pay a commission of two per cent., which would be ten dollars, or one per cent., which would be five dollars, or even one half per cent., which would be two dollars and fifty cents.

At first there was a controversy as to whether the plaintiff sent this money by express, or paid it to the express at all; but the court find that he did so, in good faith, on the third day of December. Was that a payment to the defendant company? It is well settled that the delivery of goods by a vendor to a common carrier, in accordance with the order or directions of the vendee, operates as a delivery to the vendee, so that the common carrier becomes the agent of the vendee and not of the vendor; and a loss of the goods in the carrier's hands would be the loss of the vendee and not of the vendor. And the law went further than that, even, and held that when the vendee did not appoint or name the carrier, the same principle would hold good. Thus, in *Godfrey* v. *Furzo*, 3 P. Williams 185, decided in 1733, it was held that in case " a tradesman in London, by order of a tradesman in the country, sends goods to the latter who does not appoint or name the carrier, and afterwards the carrier *imbezils* the goods, the trader in the country must stand the loss."

So, in *Dutton* v. *Solomonson*, 3 Bos. & Pul. 582 (1803), where it was claimed, in the argument, that if the vendee had not pointed out the particular mode of conveyance he would not be liable to the risk while the goods were in the hands of the carrier, and *Vayle* v. *Bayle*, Cowp. 294, and *Dawes* v. *Peck.*, 8 T. R. 330, were cited. Lord ALVANLEY, C. J., referring to that position of the counsel, said,—" When this point was first mentioned I was surprised, for it appeared to me to be a proposition as well settled as any in the law, that if a tradesman order goods to be sent by a carrier, though he does not name any particular carrier, the moment the goods are delivered to the carrier it operates as a delivery to the purchaser, the whole property immediately vests in him, he alone can bring an action for any injury done to the goods, and if any accident happen to the goods, it is at his risk. The only exception to the purchaser's right over the goods is, that the vendor, in case of the former becoming insolvent, may stop them *in transitu.*"

So Kent states the law to be—2 Kent's Com. 499—" Delivery of goods to a servant or agent of the purchaser, or to a carrier or master of a vessel, when they are to be sent by a carrier or by water, is equivalent to a delivery to a purchaser; and the property, with the corresponding risk, immediately vests in the purchaser, subject to the vendor's right of stoppage *in transitu.*" See Chitty on Cont. 439, 484, and 485; 2 Greenl. Ev., sec. 212; *Woolsey* v. *Bailey*, 27 N. H. 217, 219, and cases cited; *Smith* v. *Smith*, *id.* 244, 252, and cases cited. In these last two cases it seems to be held that, though before the day of railroads it might be necessary that the purchaser should order the goods sent by a carrier in order to have the delivery operate as a transfer of the property to the purchaser, yet that, since railroads have been in operation, and it has become the custom to transport

goods by them as a matter of course, a delivery of the goods at the depot of the railroad would complete the sale and vest the property immediately in the vendee.  *Garland* v. *Lane*, 46 N. H. 245, 248, and cases cited; 1 Ch. Pl. 6; 1 Parsons on Cont. 445; *Arnold* v. *Prout*, 51 N. H., 587.

The authorities also hold, that when the debtor delivers money to be transmitted to his creditor, in accordance with authority given him so to do by his creditor, the loss, if any, is the loss of the creditor.  So, if money were sent by the post, in a letter properly directed to the creditor, and be lost, the debtor is discharged if he was directed so to transmit the money, or that was the usual course of business between the parties.  Chitty on Cont. 750.  To the same effect is 2 Greenl. on Ev., sec. 525 ;—and he cites *Warwicke* v. *Noakes*, 1 Peake's R. 67, and *Hawkins* v. *Rutt*, 1 Peake's R. 186.  So, in *Wakefield* v. *Lithgow*, 3 Mass. 249, when the defendant had sent money to the plaintiff's attorney,· in a letter, by mail, which he did not receive—held, that if the defendant was authorized by the letter from the plaintiff's attorney to remit that sum, in that manner, at that time, the loss must fall on the plaintiff; if not, the plaintiff must have judgment.

So, in *Kington* v. *Kington*, 11 M. & W. 233, it was not doubted that a plea that the defendant had ever been ready to pay the money claimed in suit, and that on a certain day the plaintiff ordered or requested the defendant to forward the money to him by express, and that the defendant did so, and paid the same as directed, in satisfaction and discharge of the plaintiff's claim, was a good plea in bar,—though there was some informality in the plea in that case.  In this case, if the agent had said, in his letter, You may send the money to me by mail, or you can send it by mail, we should probably have understood at once that if so sent it would be at the company's risk, and it is the same when he said, You can send it by express.·  The vendee or consignee of goods or money does not need to say, Send the goods or money by express, or by mail, at my risk.  He has only to designate the manner, or instrument, or medium of transportation ; and when thus sent they are at the consignee's risk as much as though he had said in words, " at my risk."  This is implied in all such cases, and we think it was in this case.  We think the first question proposed must be answered in the affirmative.

Was the policy forfeited by the delay from November 15 to December 3 ?  The plaintiff was given to understand, and did understand, that though by the printed regulations of the company the agent could not, in terms, bind the company, and that the company had undertaken so to arrange it, if possible, that all their agents should be the agents of the assured, or, at least, shall be their own agents only to secure contracts in writing by which the company could hold all others, but that they should have no power to bind the company to anything, yet that the uniform usage and practice of the company was to receive premiums within a reasonable time after due, when there was no material change in the health of the person insured ; that the plaintiff

could safely rely on this usage, and take time to examine the subject and consider what he would do, and defer the fifth payment for a reasonable time after November 15, without running any risk of forfeiture if his wife should continue in good health; that the company would receive the premium under such circumstances without objection. The plaintiff understood, and was reasonably justified in understanding, that the uniform usage of the company was to waive the forfeiture in such cases, and that this usage would not be departed from in this case. But for this understanding he would have paid his premium on or before November 15.

But he had sufficient reason to ask delay. The other premiums he had paid, half note and half cash, and he expected to pay this one in the same way; and he had probably been assured that after a few years the dividends were to be sufficient to pay and discharge these notes — were to be fifty per cent. on the amount of his premium. But he finds it only fifty per cent. on ordinary rate, which he would not be very likely to understand much of. He acts in good faith; he desires an explanation of these two points; he applies to Loomis, who is unable to give him any satisfactory explanation. He then writes to Hinckley, in Vermont, another agent of the company, making inquiries on these points, but receives no answer. November 22 he wrote to Elmore, the secretary of the company at Hartford, making the same inquiries, and adding, I have deferred paying my fifth premium until we come to a proper understanding of the subject. He also adds, that Loomis had suggested that no advantage would be taken by the company while this question was being settled. November 30, Elmore replied, giving explanations of the dividends, and informing him that he could pay the fifth premium in the usual way, half cash and half note, if he preferred, but saying nothing further about any extension of time or waiver of forfeiture.

The plaintiff delivered to the express the whole amount in cash, relying, as to extension and waiver, upon his understanding derived from the statements of Loomis and the letter of Elmore; and if the express had delivered the money to Loomis, the plaintiff would have received a renewal receipt, and the defendants would have treated the policy as in force without raising any objection. The plaintiff's wife continued, and still continues, in perfect health; and satisfactory evidence of that fact would have been furnished the defendants by the plaintiff, if he had understood it was desired or necessary. He would also have paid interest on the premium, if he had understood that interest was demanded er expected. In his subsequent interviews and correspondence with Loomis, no certificate or evidence of health, or interest, was demanded; but the defendants, by refusing to give him a receipt for the fifth premium, and insisting upon a forfeiture, on the ground that they had not received the money delivered by the plaintiff to the express, waived their right to such certificate, evidence, and interest, if they would otherwise have been entitled thereto.

The plaintiff understood, and Loomis understood, and Elmore, the

defendants' secretary, understood, that the forfeiture was waived, and that, if the plaintiff paid his fifth premium within a reasonable time after November 15, it was to be received as though paid in time; and the court find that if the money which the plaintiff sent had been in fact received, it would have been accepted in payment and discharge of said premium.   To all intents and purposes, then, the company had absolutely agreed to waive the payment at the day, and, if it was paid within a reasonable time thereafter, to receive it in satisfaction of the premium; and the court find that the company has waived its right to all the subsequent proofs to which it might otherwise have been entitled, and that plaintiff made a proper demand, etc.

But why do we say that the case stands as if the company had absolutely waived or agreed to waive this payment at the day appointed ? It is settled, in *Hale* v. *Ins. Co.*, 32 N. H. 295, that, as a general rule, corporations have power to waive their rights, and are bound by estoppels *in pais* like natural persons.   Now, suppose Loomis could not make an agreement that should bind the company : still he knew, and could tell, and tell truly, what the uniform usage of the company had been in similar cases, and the plaintiff would have the right to presume, perhaps, that what they had uniformly done in similar circumstances, they would do in his case.   But he finally writes to the company's secretary at Hartford, and informs him that he had deferred paying this premium beyond time, and gives him the reasons, and states to him what the agent had assured him about their waiving this payment.   Now, these agents and secretaries, whether they are competent to make contracts or not, are agents of the company so far that the company may be notified through them of any facts that concern the company.

If a man whose life is insured dies, they notify the company through an agent, and either Loomis or Elmore would have been a sufficient agent of the company, so that a notice to them would ordinarily be notice to the company of such fact.   The plaintiff gave Elmore notice of the state of facts as they existed, and this must be considered as notice to the company; and though he may not have had any right to bind the company by any such contract, the company, when notified through him, should speak through him, or in some other way, and give the notice that no such arrangement will be made in the specified case. But, on the contrary, when Elmore is notified of the state of the case, he gives the desired information in regard to the dividend, and then says to the plaintiff, You can pay this premium, half cash and half note, if you wish, notwithstanding you have been notified to pay all cash, and after I have received your notice that the time has passed in which, by its terms, it should have been paid.   The company were called on to speak when they were notified that this plaintiff had allowed his premium to go by the time, upon the representations and assurances of their agent, and that he was still trusting those assurances.   They should have denied the fact as stated, or in some way have given him to understand that he could not rely with safety upon those representa-

tions and assurances,—but instead, the company say nothing; but their secretary says, You may thus trust, and no advantage shall be taken of you. We think the company must in that way be held to have ratified what their agent said, and to have waived all objection to that course. They are estopped to deny that they did so. ·

So, in *Glidden* v. *Unity*, 33 N. H. 571, 577, it is said that in all American courts, towns and other corporations are now to be considered as subject to the same presumptions and implications arising from their corporate acts, or the acts of their agents within the scope of their authority, without either vote, deed, or writing, as in the case of natural persons. This statement of the law is taken substantially from 2 Kent's Com. 290, and authorities there collected in note *b*. A promise may be made directly by their agents acting within the scope of their authority, or such promise may be implied against the corporation from the acts of its agents within their authority, like natural persons. *Smith* v. *Meeting-house*, 8 Pick. 178. So, in Angell & Ames on Corp., sec. 237, it is said that a corporation may as well be bound by express promises through its authorized agents as by deed, and that promises may as well be implied from its acts and the acts of its agents, as if it had been an individual;—and see authorities in note.

So, in *Pierce* v. *Insurance Co.*, 50 N. H. 297, it was held that a condition inserted in a policy for the benefit of the company might be waived by the company, and that the declarations or acts of an agent of the company are competent evidence of such waiver by the company; and so in *Lyman* v. *Littleton*, 50 N. H. 42. *Clark* v. *Insurance Co.*, 6 Cush. 342, and *Heath* v. *Insurance Co.*, 1 Cush. 257, as well as *Lyman* v. *Littleton*, 50 N. H. 42, are authorities to the point, that, when a particular objection to notice or to proof of loss, or to anything which is required to be done, is made and insisted on, and no others are suggested, it will be considered as a waiver of other objections. To the same point are *Vos* v. *Robinson*, 9 Johns. 192, *Insurance Co.* v. *Tyler*, 16 Wend. 385, 401, and *McMasters* v. *Westchester Co. Ins. Co.*, 25 Wend. 379. There must be

*A decree for the plaintiff.*